■ Alfred O. Kuhnle, Petitioner, v New York State Division of Human Rights et al., Respondents.—Application pursuant to section 298 of the Executive Law to set aside and annul an order of the State Human Rights Appeal Board, affirming an order of the State Division of Human Rights dismissing petitioner's original complaint for lack of jurisdiction. Memorandum. Determination confirmed and petition dismissed, without costs and without disbursements. Lupiano, J. (dissenting). Petitioner, Alfred

O. Kuhnle, applies for an order of this court, pursuant to section 298 of the Executive Law, to set aside and annul an order of the State Human Rights Appeal Board entered May 16, 1975. The order of the appeal board affirmed (by a 3-1 vote) an order of the State Division of Human Rights entered February 6, 1975 which dismissed the petitioner's complaint for lack of jurisdiction. The relevant facts are as follows: Petitioner was appointed to the New York City Fire Department on December 14, 1937. On July 9, 1959 he was granted a disability pension from the department for an on-the-job injury. On or about March 1, 1969 and apparently to date, petitioner was employed by the Board of Education of the City of New York. On or about August 20, 1970 his disability pension was suspended, retroactive to March 1, 1969. This occurred as a consequence of section 1117 of the New York City Charter which provides in pertinent part: "If a person receiving a pension * * * by reason of his own prior employment by the city or any agency, shall hold and receive any compensation from any office, employment or position under the state or city * * * the payment of said pension only shall be suspended and forfeited during and for the time he shall hold and receive compensation from such office, position or employment; but this section shall not apply where the pension and the salary or compensation of the office, employment or position amount in the aggregate to less than one thousand eight hundred dollars annually". At all critical times herein, sections 210 (subd a, par 1) and 211 of the Retirement and Social Security Law, notwithstanding "the provisions of any local law or charter," permitted a person retired "for other than physical disability" to obtain employment in the public service "without any effect on his status as retired and without suspension or diminution of his retirement allowance" subject to certain conditions and approval delineated in section 211. As petitioner was receiving a pension for a physical disability, he did not qualify for and could not avail himself of the benefit of these statutory enactments. Thus, the Fire Department of the City of New York by letter dated March 14, 1969 informed petitioner that as his retirement was not for *service,* his request for approval to the Board of Education of the City of New York to employ him as a regular teacher could not be granted and that unless he terminated such employment, his pension would be forfeit. Subsequently, section 292 of the Executive Law was amended by virtue of section 1 of chapter 988 of the Laws of 1974 (eff Sept. 1, 1974), to include in subdivision 20 a definition of the term "disability"—"The term 'disability' means a physical, mental or medical impairment * * * provided, however, that in all provisions of this article dealing with employment, the term shall be limited to physical, mental or medical conditions which are unrelated to the ability to engage in the activities involved in the job or occupation which a person claiming protection of this article shall be seeking". Similarly, subdivision 1 of section 296 of the Executive Law was amended to include discrimination based upon "disability" as an unlawful practice—"It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of * * * disability * * * of any individual * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment". By letter dated September 19, 1974, petitioner through counsel, citing the amendments to the Executive Law delineated above, requested reinstatement of his disability pension as of September 1, 1974. Receiving no response, petitioner on October 28, 1974 filed a complaint with the State Division of Human Rights charging that the Fire Department and the City of New York had discriminated against him in the terms, conditions and privileges of his employment by denying him his pension, because of his

disability, *since September 1, 1974,* in violation of the New York State Human Rights Law. Petitioner's complaint was dismissed in a "Determination And Order After Investigation" dated February 6, 1975 wherein the State Division of Human Rights declared that "it does not have jurisdiction in this matter for the following reasons: The alleged act of discrimination occurred on August 20, 1970 * * * a complaint must be filed with the Division within one year after the occurrence of the alleged unlawful discriminatory practice. Also, the question of the complainant's disability predated September 1, 1974 at which time the Division had no jurisdiction". Appeal to the State Human Rights Appeal Board resulted in an affirmance, the majority adopting the rationale of the "Determination And Order After Investigation" with the added observation that "the action of the New York City Fire Department was not related to complainant's employment but to his pension or retirement". Parenthetically, it is well to note that the merits of petitioner's complaint were not considered, as the complaint was rejected on the ground of lack of jurisdiction. The well-reasoned dissent of Appeal Board member Lloyd L. Hurst addressed this point as follows: "The file in this case contains a letter dated September 19, 1974 addressed to the Fire Commissioner from an Attorney at Law representing the appellant. Counsel refers to the disability of the appellant, the suspension of his pension, and requests that the respondents reinstate the pension in view of the aforementioned amendment to the Human Rights Law. No response from respondents is in the file. It seems to me that the questions raised by counsel *should be answered* by the Division and the Fire Department, and could well be the basis of a complaint filed after September 1, 1974" (emphasis supplied). Patently, the request for reinstatement of the pension on September 19, 1974 and the inaction of respondents in respect thereto form the predicate of the unlawful discriminatory practice complained of. Where an alleged discriminatory practice is of a continuing nature, a complaint filed subsequent to its inception up to and including its cessation, is timely and the division has jurisdiction to entertain such complaint *(Matter of Russell Sage Coll. v State Div. of Human Rights,* 45 AD2d 153). The discriminatory practice of permitting pensioners who retired for other than physical disability to obtain employment in the public service without suspension of their pensions while barring similar status to those retired for physical disability is beyond peradventure a continuing one, albeit one sanctioned by the Retirement and Social Security Law. Further, the provisions of the Retirement and Social Security Law permitting discrimination based on the pensioner's status as aforesaid may not be viewed as depriving the State Division of Human Rights of jurisdiction in the instant matter (see *Board of Educ., Cent. School Dist. No. 1 v State Div. of Human Rights,* 42 AD2d 473). In discussing title VII of the Civil Rights Act of 1964 [US Code, tit 42 § 2000e *et seq.]* which was designed to assure equality of employment opportunities by eliminating practices that discriminate on the basis of race, color, religion, sex, or national origin, the United States Supreme Court observed that Congress "considered the policy against discrimination to be of the 'highest priority'." *(Alexander v Gardner-Denver Co.,* 415 US 36, 47). The recent amendments to the Executive Law as particularized herein must be viewed in similar fashion. The opinion of the dissenting member of the State Human Rights Appeal Board also relates that he was "unable to understand the handwritten notes which appear to be a part of the investigation report" and that "The State Division of Human Rights has access to the top legal personnel in this field, and to dismiss this complaint without an opinion from its Legal Division is * * * arbitrary, capricious, and a

clearly unwarranted exercise of discretion". I am in sympathy with these views. The discriminatory practice complained of while not directly related to "employment" most certainly relates to "terms, conditions or privileges of employment" (Executive Law [Human Rights Law], § 29.6, subd 1). On the question of jurisdiction only, therefore, the determination of the State Human Rights Appeal Board must be annulled. The merits of petitioner's complaint are deserving of full consideration and an adequate and complete record should be made. In this context the lawfulness or unlawfulness of the discriminatory practice at issue will be considered. Germane to this will be consideration of the constitutionality of the Executive Law provisions authorizing discrimination between retired persons receiving a retirement allowance for other than physical disability and those retiring for physical disability. Contrary to respondents' assertion, the distinction between a service pension and disability pension delineated in the aforesaid Executive Law provisions was not found constitutional in *Thorne v Fire Dept. of City of N. Y.,* 46 AD2d 848, app dsmd 36 NY2d 700. This court merely affirmed an order of the Supreme Court at Special Term, New York County, which denied a motion by plaintiff for summary judgment in a declaratory judgment action. On appeal in that case no judgment was awarded respondents and the Court of Appeals in granting the motion of respondents to dismiss the appeal found "no substantial constitutional question * * * directly involved" *(Thorne v Fire Dept. of City of N. Y., supra,* p 701). It is noted that respondent Fire Department and respondent City of New York herein were also respondents in *Thorne.* Accordingly, the determination of the State Human Rights Appeal Board dismissing the petitioner's complaint dated May 16, 1975 should be annulled and the matter remanded to the State Division of Human Rights for a hearing consistent with the aforesaid. Murphy, J. P., Capozzoli and Lane, JJ., concur in decision; Lupiano, J., dissents in opinion. Determination of the State Human Rights Appeal Board, dated May 16, 1975, confirmed, without costs and without disbursements, and the petition dismissed.